UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INTERNATIONAL ENGINEERING &
CONSTRUCTION S.A. and GREENVILLE
OIL & GAS CO. LTD.,

        Petitioners,

        -against-

BAKER HUGHES, A GE COMPANY, LLC
and BAKER HUGHES, A GE COMPANY,

        Respondents.

Index No. 1:18-cv-09241 (AT)

---

## SUPPLEMENTAL BRIEF ADDRESSING INAPPLICABILITY OF "AGGRIEVED" STANDARD UNDER § 4 OF THE FEDERAL ARBITRATION ACT

FREEHILL HOGAN & MAHAR LLP
*Attorneys for Petitioners*
80 Pine Street, 25th Floor
New York, New York 10005-1759
(T): 212.425.1900 | (F): 212.425.1901

BAKER BOTTS LLP
*Co-Counsel for Petitioners*
30 Rockefeller Plaza
New York, New York 10112-4498

## PRELIMINARY STATEMENT

Petitioners submit this memorandum to address the Court's request for supplemental briefing (Dkt. 40) on the application of the "aggrieved" standard under § 4 of the Federal Arbitration Act ("FAA"). As explained herein, the § 4 "aggrieved" standard is inapplicable because it conflicts with § 206 of the New York Convention. Under § 206, there is no requirement that a petitioner be "aggrieved" before a court is empowered to compel arbitration. Section 206 therefore controls. The cases referenced in the Court's Order are inapplicable because they rely on § 4 case law and did not address or consider the conflict that exists between § 4 and § 206 (an issue not raised by the litigants in those cases). But even if this Court were to disagree and consider § 4's "aggrieved" standard applicable, that standard has nevertheless been satisfied, as evidenced by the respondents' recent conduct in the arbitration. As such, a judicial determination is required both with respect to (i) the proper situs for the determination of the arbitrability issue, and (ii) the resolution of BH's status as a non-signatory.

## ARGUMENT

1. **Section 4 of the FAA Conflicts with § 206 of the Convention. Section 206 Imposes no "Aggrieved" Requirement, and it therefore Controls.**

IEC's Petition was filed under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (the "Convention"), as supplemented by the FAA. (Dkt. 5 at ¶2). Filing as such was proper because the underlying commercial contracts are between IEC and BH, foreign and domestic business entities, respectively. *See* 9 U.S.C. § 202. The FAA and the Convention are not mutually exclusive regimes – they work cooperatively and are said to have "overlapping coverage," ***except*** to the extent that they conflict. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006). Where they conflict, the Convention controls. 9 U.S.C. § 208.

As relevant here, the Convention and the FAA contain conflicting provisions governing motions to compel. The Convention's provision states:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States....

9 U.S.C. § 206. The FAA's provision is, by contrast, more stringent, stating:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Thus, under the FAA, acquiring "aggrieved" status as a result of the "failure, neglect, or refusal of another to arbitrate" is a statutory condition precedent to a court's ability to compel arbitration, see *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) (cited by the Court), but not so for cases under the Convention.

Under the Convention's plain text, the only threshold question is whether a valid agreement to arbitrate exists in the context of an international commercial agreement. If so, the court is empowered to issue an order compelling arbitration. The Southern District of New York reached this conclusion in its well-reasoned opinion in *Daye Nonferrous Metals Co. v. Trafigura Beheer B.V.*, 1997 U.S. Dist. LEXIS 9661 (S.D.N.Y. July 2, 1997). There, the court was presented with the question whether Daye could compel Trafigura to arbitrate a breach of contract dispute under the FAA and the Convention. Trafigura argued that an order compelling arbitration was inappropriate as Daye was not "aggrieved" under § 4. Daye had not demanded arbitration, but merely proceeded with the action to compel, and Trafigura had never refused or declined arbitration, but had expressed a willingness to proceed to arbitration. Because Daye was

not "aggrieved" under § 4, Trafigura argued, the case had to be dismissed for lack of a genuine case or controversy.[1]

Daye responded that no "aggrieved" requirement applied because there is a conflict between § 4 and § 206, and § 206 therefore controls. The court agreed with Daye:

> There is a conflict between the language of § 4 and that of § 206. Section 206 in short provides that once it is established that a court has jurisdiction under Chapter 2, that court may "direct that arbitration be held in accordance with the agreement at any place therein provided for...." Given that "Congress 1) intended the broadest possible implementation of the Convention," 2) specifically favored the Convention over the FAA for preemption purposes, and 3) enacted § 206 long after it enacted § 4 (and therefore presumably would have adopted the language of § 4 had it desired), it would be remiss to assume that Congress intended the provisions' requirements to be the same given their striking linguistic differences.
>
> It is established that "the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." "When the language of a statute is unambiguous, the first canon is also the last, as the judicial inquiry ends when the ordinary meaning of Congress' words is clear." In short, this court finds that § 206 unambiguously provides that "A court ... may direct that arbitration be held in accordance with the agreement at any place therein provided for..." ***Quite simply, contrary to § 4, there exists no requirement that a party obtain a specific status before a court can compel arbitration. Therefore, in strict accordance with the language of § 206, Daye Nonferrous need not have been "aggrieved."***

*Id.* at *21-23 (emphasis added) (citations omitted). The court expressly rejected Trafigura's argument, based on *Builders Fed. (Hong Kong), Ltd. v. Turner Constr.*, 655 F. Supp. 1400 (S.D.N.Y. 1987), that the lack of a specific reference in the Convention to the aggrieved standard effectively means the Convention is silent on the point and allows § 4 to apply. The court explained that "there is an obligation to interpret a provision rather than deeming it "silent." What one interpreter views as "silence" might be viewed as a deliberate omission by another." *Id.* at *21.

---

[1] These facts do not appear in the court's decision, but were outlined in the parties' briefs.

506428.1                                3

The *Daye Nonferrous* court's reasoning is instructive and leads to the conclusion that, in light of the conflict between § 4 and § 206, it is § 206 that controls, and thus no "aggrieved" requirement applies. There is no basis to inject such a requirement into the language of § 206, where it does not appear. The cases referenced in the Court's Order, including *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194 (2d Cir. 2004) and *Downing*, 725 F.2d 192, are, respectfully, inapplicable because they relied solely on § 4 case law, and the fundamental question of whether § 4 and § 206 stand in conflict with each other (which they do) was simply not briefed or even considered.[2] IEC therefore submits that the Court thus has the power to decide (i) where the determination of arbitrability is to be made, and (ii) whether BH must arbitrate the merits of the underlying dispute.

Importantly, § 4's "aggrieved" requirement should not be conflated with the requirement that there be a "case or controversy." The two standards are not co-extensive. The term "aggrieved" is a specifically defined statutory term that has been construed narrowly by courts in cases where § 4 is applicable. While achieving statutory "aggrieved" status would obviously satisfy the "case or controversy" requirement applicable in every case, that does not mean that in the absence of statutory "aggrieved" status the case or controversy requirement can never be satisfied. And as such, there is no basis to import the more stringent § 4 aggrieved language into § 206 because the requisite case or controversy predicate is already applicable, and that is the only gateway issue necessary to empower the court to hear and decide a § 206 case.

This Petition presents a concrete case or controversy for two reasons. First, there is a dispute as to which forum is the appropriate place for resolution of the arbitrability issue. Likewise, the dispute as to BH's status (as successor or alter ego) presents a case or controversy.

---

[2] The Second Circuit has not addressed the question whether § 4 of the FAA and § 206 of the Convention conflict. *See FR 8 Singapore Pte. Ltd. v. Albacore Mar., Inc.*, 754 F. Supp. 2d 628, 631 n.2 (S.D.N.Y. 2010).

These disputes are not abstract or theoretical. They are concrete controversies which are remediable by an order from this Court. Judicial resolution is therefore appropriate.

2.  **Even if an "Aggrieved" Requirement Applies, IEC is Aggrieved.**

Finally, even under the § 4 aggrieved standard, IEC is aggrieved. Without re-plowing ground already covered, BH's last position in the case was that dismissal of the Petition was proper because it had agreed to arbitrate arbitrability, claiming that the arbitrability issue was "already pending" before the arbitrators. But just weeks ago, respondents in the arbitration lodged an objection to IEC's protective discovery demands concerning BH's status as successors/alter egos on the basis that these requests "relate to an issue that is pending before a U.S. Court." Given this, BH's stated position (*i.e.* that the issue "is pending before a U.S. Court") is an admission as to the proper forum for the resolution of the arbitrability issue. BH's conflicting statements are designed to mislead both the arbitrators and this Court into believing that the other forum is already addressing the issue so that it never receives the attention it deserves.

This is not the conduct of a party that has "appeared" in an arbitration to contest arbitrability. For example, in *LAIF*, 390 F.3d 194 (cited by the Court), Telinor, the party sought to be compelled to arbitrate, appeared in the arbitration and moved to dismiss for lack of an arbitrable dispute. The Second Circuit found that this conduct did not satisfy § 4's "failure, neglect, or refusal" standard. Here, by stark contrast, the respondents in the arbitration have flat-out refused to engage on the arbitrability issue, as outlined above. The notion that BH is participating in the arbitration is just not true, and this Court is the appropriate place for resolution of these disputes.

Dated: New York, New York
June 4, 2019

                        FREEHILL HOGAN & MAHAR LLP
                        *Attorneys for Petitioners*

By: */s/ Peter J. Gutowski*
      Peter J. Gutowski
      Gina M. Venezia
      Yaakov U. Adler
      J. Tanner Honea
      80 Pine Street, 25th Floor
      New York, NY 10005-1759
      (T): 212.425-1900 | (F): 212.425.1901