USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL ENGINEERING & CONSTRUCTION S.A. and GREENVILLE OIL & GAS CO. LTD.,

                Petitioners,

-against-

BAKER HUGHES, A GE COMPANY, LLC and BAKER HUGHES, A GE COMPANY,

                Respondents.

18 Civ. 9241 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioners, International Engineering & Construction S.A. ("IEC") and Greenville Oil & Gas Co. Ltd. bring this action against Respondents, Baker Hughes, a GE Company, LLC ("BHGE LLC") and Baker Hughes, a GE Company ("BHGE") (collectively, the "BHGE entities"), to compel arbitration. Pet., ECF No. 5. The BHGE entities move to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6). ECF No. 31. For the reasons stated below, the motion is GRANTED.

## BACKGROUND

Except as noted, the following facts are taken from the petition, which the Court accepts as true for purposes of this motion. *See ATSI Commc'ns, Inc. v. Sihaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (evaluating a Rule 12(b)(6) motion).

This case arises from three related contracts between IEC and GE Oil & Gas, Inc.[1] ("GEOG") involving (1) "the sale of two small-scale LNG liquefaction Plants" (the "Sales Contract"); (2) "the provision of personnel to supervise the erection, commissioning, and operation of the Plants" (the "Services Agreement") and (3) "a guarantee of performance under the Services Agreement" (the "Guarantee Agreement") (collectively, the "Contracts"). Pet. ¶ 1. The Sales Contract and Services

---

[1] GE Oil & Gas, Inc. is now known as GE Oil & Gas, LLC. Resp. Mem. at 4, ECF No. 32.

Agreement both contain an arbitration clause providing that, "[i]n the event of any dispute arising out of or in connection with the [respective Contract], the Parties agree to submit the matter to arbitration to be administered by the AAA under its Commercial Arbitration Rules." Sales Contract § 20.1, ECF No. 5-1 (filed under seal); Services Agreement § 20.1, ECF No. 5-2 (filed under seal). The Guarantee Agreement's arbitration clause incorporates the Services Agreement's arbitration clause. *See* Guarantee Agreement § 7, ECF No. 5-3 (filed under seal) ("Any and all disputes arising under or relating to this Guarantee shall be subject to the Dispute Resolution Clause (the arbitration clause) as contained [in] the Services Agreement, which is incorporated herein by reference."). GEOG and IEC are the signatories to the Contracts. *See* Guarantee Agreement; Services Agreement; Sales Contract.[2]

A dispute arose between IEC and GEOG concerning the performance of the Contracts. Pet. ¶ 39. On July 31, 2018, Petitioners commenced arbitration proceedings (the "Arbitration") under the American Arbitration Association ("AAA") Rules by filing a demand for arbitration (the "Notice of Demand") of all disputes arising under the Contracts. *Id.* ¶ 46; Notice of Demand, ECF No. 5-4. The Notice of Demand was filed against GEOG, the signatory to the Contracts, and the BHGE entities, non-signatories. Pet. ¶ 48; Notice of Demand. Petitioners named the BHGE entities because they allege that during the performance of the Contracts, General Electric Company, the parent holding company of GEOG, merged with Baker Hughes, Inc. and related entities. Pet. ¶ 49. As a result, the "GE oil and gas business" was transferred into Respondent BHGE LLC, which is "owned, in part, and controlled fully" by Respondent BHGE. *Id.* ¶¶ 50–51. Accordingly, Petitioners identified the

---

[2] The Services Agreement was between GE International Operations (Nigeria) Ltd., a GEOG affiliate, and IEC. Guarantee Agreement; *see also* Pet. ¶ 33 (identifying GE International Operations (Nigeria) Ltd. as an affiliate of GEOG); ECF No. 5-4. Petitioner Greenville Oil & Gas Co. Ltd. was not a party to the Contracts, but is "a wholly owned subsidiary within the IEC structure of companies [and] is under the control of IEC." Pet. ¶ 6. Greenville "has joined [IEC] as a Petitioner to ensure that the Court's decision on the issue of whether [the BHGE entities] are required to proceed to arbitration on the substantive claims under the subject contracts equally applies . . . [to] Greenville's claims." Pet. ¶ 47. For the reasons stated below, the Court is dismissing the petition and, therefore, does not reach that issue.

2

BHGE entities in the Arbitration because these were the entities "into which the former GE oil and gas business had been shifted." *Id.* ¶ 54.

On August 31, 2018, the BHGE entities appeared in the Arbitration by filing an "Answering Statement." Answering Statement, ECF No. 28-5. In the Answering Statement, the BHGE entities raised objections concerning the arbitrability of the claims, stating that they are not signatories to the Contracts. *Id.* ¶ 2; Pet. ¶ 55. They requested that the arbitral tribunal (the "Tribunal") issue an award declaring that it does not have jurisdiction to rule on any claims. Answering Statement ¶ 2.A. The Tribunal has not yet ruled on that issue, but in a letter dated August 20, 2018, the International Centre for Dispute Resolution, a division of the AAA, acknowledged receipt of the Notice of Demand and indicated that "[t]he non-signatory item has sufficiently been briefed to determine that any questions in this regard must be determined by the Tribunal once appointed." ECF No. 28-6 at 2. On October 9, 2018, Petitioners filed a petition in this Court to compel arbitration against the BHGE entities. *See* ECF No. 1.

On November 28, 2018, the Tribunal created a draft procedural order to govern the Arbitration (the "Draft Procedural Order"). Draft Procedural Order, ECF No. 33-6. Paragraph 24 states that the Tribunal "shall decide all issues arising from the submissions, statements and pleadings of the Parties relevant to the adjudication of the Parties' respective claims, defenses and counterclaims, as the case may be, *including any jurisdictional objections raised by any Party*, as well as from evidence produced throughout the proceedings." *Id.* ¶ 24 (emphasis added). Paragraph 34 provides that the Tribunal "may decide any procedural issue . . . in a procedural order, and any other issue concerning the jurisdiction and merits of the case in a partial, interim or final award, as it may deem appropriate." *Id.* ¶ 34.

A preliminary hearing was scheduled for December 4, 2018. ECF No. 33-7. Following the hearing, the Tribunal directed the parties to submit individual proposals regarding requested

modifications to the Draft Procedural Order if they could not reach an agreement. ECF No. 35-1 at 2. On December 12, 2018, Petitioners requested that paragraphs 24 and 34 of the Draft Procedural Order be amended to include a reference to the proceedings before this Court. ECF No. 35-2 at 2–3. Specifically, Petitioners requested language be included stating that the Tribunal was aware of the pending litigation and "takes no position whatsoever either for or against either of the parties' positions in respect to [the] pending litigation" and that the Tribunal would "adhere to any ruling issued by the Court with respect to the issues raised in that proceeding." *Id.* at 2. The BHGE entities argued that the Draft Procedural Order should not refer to the litigation for fear that IEC would use it to "create an appearance that the Tribunal does not have authority to consider the jurisdictional issues that IEC has asked the court to decide." ECF No. 35-3 at 2. By letter dated December 14, 2018, after reviewing the arguments, the Tribunal informed the parties that it "considers that it is not appropriate to include a reference to the court proceedings in Procedural Order No. 1." ECF No. 35-4 at 2.

The Arbitration is ongoing, and hearings are scheduled to take place between December 9–20, 2019. ECF No. 39.

**DISCUSSION**

I. <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2d Cir. 2009)). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns*, 493 F.3d at 98. A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Pleadings cannot survive by making "naked assertion[s] devoid of further factual

4

enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"[A] court is generally confined to the facts alleged in the . . . petition for the purposes of considering a motion to dismiss pursuant to 12(b)(6)." *G.distributors, LLC v. Scanlon*, No. 18 Civ. 2101, 2018 WL 6329444, at *3 (S.D.N.Y. Dec. 3. 2018). "A court may, however, consider documents attached to the [petition], statements or documents incorporated into the [petition] by reference, matters of which judicial notice may be taken, public records, and documents that the [petitioner] either possessed or knew about, and relied upon, in bringing the suit." *Id.* (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *D/S Norden A/S v. CHS de Paraguay SRL*, No. 16 Civ. 2274, 2017 WL 473913, at *2 (S.D.N.Y. Feb. 3, 2017) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010))). Accordingly, the Court will consider the documents attached to the petition. Each party has also attached communications with the Tribunal and other documents filed in the Arbitration. *See* ECF Nos. 28, 33, 35. Because Petitioners are seeking to compel arbitration in part because they allege that the BHGE entities are refusing to arbitrate, the Court will consider the documents that relate to the Arbitration because they are incorporated by reference into the petition.

II. Analysis

A. Relevant Law

1. Applicability of Section 4 of the Federal Arbitration Act

This case comes to the Court in an unusual posture—Petitioners move to compel an arbitration that is already under way. A threshold issue for the Court is whether Petitioners must demonstrate that they have been "aggrieved" by the BHGE entities' "failure, neglect, or refusal" to arbitrate within the meaning of Section 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, before they can ask this Court to compel arbitration.

5

There are two relevant chapters of the FAA: Chapter One, 9 U.S.C. §§ 1–16 (the "General Provisions"), and Chapter Two, 9 U.S.C. §§ 201–208, (the "Convention Act") which implements the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Generally, the Convention Act and the New York Convention through incorporation govern this suit because the Contracts from which it arises involve foreign and domestic business entities. 9 U.S.C. § 202; Pet. ¶¶ 5–10 (describing the parties). However, the General Provisions also apply unless they conflict with the Convention Act or the New York Convention. 9 U.S.C. § 208.

The issue here is whether Section 4 of the General Provisions conflicts with Section 206 of the Convention Act. Section 206 provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Id.* § 206. Section 4 of the General Provisions states,

> A party *aggrieved by the alleged failure, neglect, or refusal of another to arbitrate* under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

*Id.* § 4 (emphasis added).

The question for the Court is whether the "aggrieved" requirement of Section 4 of the General Provisions conflicts with Section 206. Petitioners argue that it does conflict because it requires that a party be aggrieved before a court can compel arbitration, whereas "the only threshold question [under Section 206] is whether a valid agreement to arbitrate exists in the context of an international commercial agreement." ECF No. 41 at 2. Petitioners contend, therefore, that they need not demonstrate that they have been aggrieved.

6

The Court finds that the two provisions do not conflict and, therefore, Petitioners must demonstrate that they have been aggrieved. The limited case law analyzing this issue in this Circuit supports this conclusion. In *Evans & Sutherland Computer Corp. v. Thomson Training & Simulation Ltd.*, the district court determined that Section 4 of the General Provisions applies to petitions brought under the Convention Act such that a party must demonstrate that it has been "aggrieved by another party's failure, refusal, or neglect to arbitrate." No. 94 Civ. 6795, 1994 WL 593808, at *3 (S.D.N.Y. Oct. 28, 1994). Similarly, the district court in *Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd.*, 200 F. Supp. 2d 102, 107–08 (D. Conn. 2002), concluded that there was no conflict. Because the Convention Act implements the New York Convention, to analyze whether Section 4 conflicted with Section 206, the court determined that it must consider both the Convention Act and the New York Convention. *Id.* at 108 ("Thus, the court must determine whether the requirements of Section 4 conflict with the Convention Act or the New York Convention itself."). There was no conflict because Article II, § 3 of the New York Convention, which the Convention Act incorporates, "requires that a court, 'when seized of an action' where the parties have agreed to arbitrate, shall 'refer the parties to arbitration.'" *Id.* (internal citation omitted). Therefore, "[r]equiring a petitioner to allege that the adverse party has actually failed, neglected, or refused to arbitrate assures the court that there is, in fact, a dispute concerning whether the parties should arbitrate. If the adverse party has not refused to arbitrate, or will agree to arbitrate, there is no reason for court involvement in the first place." *Id.* In other words, the court is not "seized of an action" unless the adverse party had failed, neglected or refused to arbitrate. Moreover, the court reasoned that "the purposes behind the requirements of Section 4 are compatible with the [Convention Act's] goal of promoting speedy and efficient resolutions of arbitration disputes." *Id.*

The Second Circuit has not squarely addressed this issue, but in dicta it signaled its approval of *Hartford Accident* when it used its rationale to determine that a different section of the General

7

Provisions did conflict with the Convention Act. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 435–37 (2d Cir. 2004). In particular, the Second Circuit noted that, in coming to the conclusion that Section 4 did not conflict with Section 206, "the [district] court observed that § 4 imposed no limits on jurisdiction beyond those already imposed by basic Article III principles of standing." *Id.* at 437. Thus, "[b]ecause § 4 imposed no additional limits on a suit brought pursuant to § 206, no conflict existed between the two provisions." *Id.*

The single case Petitioners cite in support of their position was decided years before *Hartford Accident* and *Phoenix*, and only analyzed the text of Section 206 and Section 4. *See Daye Nonferrouse Metals Co. v. Trafigura Beheer B.V.*, No. 96 Civ. 9740, 1997 WL 375680, at *9 (S.D.N.Y. July 7, 1997) *vacated in part on other grounds*, 152 F.3d 197 (2d Cir. 1998) ("Quite simply, contrary to § 4, there exists no requirement that a party obtain a specific status before a court can compel arbitration. Therefore, in strict accordance with the language of § 206, [plaintiff] need not have been 'aggrieved.'"). It did not consider the text of Article II, § 3 of the New York Convention, which the Convention Act incorporates, or the Article III issue. Accordingly, the Court finds no reason to depart from the weight of authority in this Circuit and holds that Section 4 does not conflict with Section 206.

2. Aggrieved

Having found that Section 4 applies to this action, the Court must now determine whether Petitioners have been "aggrieved." Under Second Circuit law, Petitioners cannot demonstrate that they have been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," 9 U.S.C. § 4, because BHGE is already participating in the arbitration proceedings, *see* Answering Statement. BHGE's objection to the arbitrability of the claims before the arbitrator is not a refusal to arbitrate within Section 4. *See LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004) ("[Respondent's] challenge to the arbitrability of

8

[petitioner's] claims before the AAA does not constitute a refusal to arbitrate."); *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) ("The fact that respondents raised before the AAA an objection to petitioner's Demand for Arbitration—and the fact that the AAA agreed with that objection—does not constitute a 'refusal to arbitrate' on the part of respondents."); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) (" Unless [respondent] commences litigation or is ordered to arbitrate this dispute . . . and fails to do so, it is not in default of any arbitration agreement it may have with [petitioner]. Absent such default, arbitration cannot be compelled under Section 4."). Accordingly, because Petitioners have failed to demonstrate that they have been aggrieved within the meaning of Section 4, the BHGE entities' motion to dismiss the petition is GRANTED.

B. Clear Evidence of Intention to Arbitrate

Moreover, even if Section 4 of the General Provisions did not apply, the Court would still dismiss the petition because there is clear evidence that IEC and the BHGE entities intended to arbitrate. Although there is a general presumption that questions of arbitrability should be decided by the courts, *see PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996), the issue may be submitted to an arbitrator when "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," *Contec Corp. v. Remote Sol.Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks, emphasis, and citation omitted). An arbitration clause that incorporates the AAA's rules "that empower an arbitrator to decide issues of arbitrability . . . serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.* at 208.

There is no question that the Contracts incorporate by reference the AAA rules that delegate the issue of arbitrability to the arbitrator. *See, e.g.*, Services Agreement § 20.1 ("In the event of any

9

dispute arising out of or in connection with (this contract), the Parties agree to submit the matter to arbitration to be administered by the AAA under its commercial Arbitration Rules."); *see also* AAA Rule R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.").

The dispute here is whether the arbitration clause applies to the BHGE entities, who are not signatories to the Contracts. In *Contec*, the Second Circuit held that to decide whether "arbitration of arbitrability [between a non-signatory and a signatory] is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." 398 F.3d at 209. The court found that arbitration of the arbitrability question was appropriate in *Contec* where a non-signatory sought to compel arbitration of a dispute arising under an agreement signed by its prior corporate form because three factors were present. *Id.* at 207, 209. First, there was an "undisputed relationship" between the parties, second, the party seeking to avoid arbitration with the non-signatory had signed the arbitration agreement, and third, the dispute arose because the parties continued to conduct themselves as subject to the agreement with the arbitration clause. *Id.* at 209. The sufficiency of this relationship permitted the non-signatory "to compel arbitration even if, in the end, an arbitrator were to determine that the dispute is not arbitrable because [the non-signatory] cannot claim rights under the [] [a]greement." *Id.*

The parties' dispute here centers on the first factor—the relationship between the parties.[3] There is an undisputed relationship between GEOG, a signatory to the Contracts, and the BHGE

---

[3] The first factor is clearly established because IEC was a signatory to the Contracts. *See* Sales Contract; Services Agreement; Guarantee Agreement. The third factor has not been established, but this is not dispositive because *Contec* did not state that all three factors had to be met. Moreover, this case is in a different posture than *Contec*. Namely, in *Contec* the non-signatory filed a petition to compel arbitration that the signatory opposed, whereas here IEC, the signatory, filed a Demand for Arbitration against the non-signatory, the BHGE entities, and the BHGE entities appeared in the Arbitration. Although the BHGE entities dispute whether the Tribunal has jurisdiction to resolve the merits of the claims, they appear to have consented to the Tribunal's jurisdiction to determine whether it has jurisdiction. In other words, the dispute before the Court—whether the Tribunal has jurisdiction to determine its jurisdiction—arose because IEC, the party seeking to avoid arbitration of this issue, "conduct[ed] [itself] as [though IEC and the BHGE entities were]

entities. GEOG's sole member is BHGE LLC, and BHGE holds a 37.5% economic interest in BHGE LLC. ECF No. 28 ¶¶ 2–3. In other words, "BHGE has a parent/subsidiary relationship with [GEOG]." Resp. Reply at 11, ECF No. 36; *see also* ECF No. 28 ¶¶ 14–15. Petitioners argue this is insufficient because the BHGE entities contest the Tribunal's jurisdiction to resolve the underlying merits of the suit in their Answering Statement on the grounds that they are not successors-in-interest to GEOG. Pet. Opp. at 12, ECF No. 34.

*Contec* makes clear, however, that the dispute itself does not have to be arbitrable for there to be a "sufficient relationship" such that the question of arbitrability is for the arbitrator to decide. *See Contec*, 398 F.3d at 209 (sufficiency of relationship allowed non-signatory to "compel arbitration even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because [the non-signatory] cannot claim rights under the [] [a]greement"). In other words, even if the BHGE entities are not successors-in-interest, it is still possible that there is a sufficient relationship between the parties such that the arbitrator, rather than the Court, should make the threshold determination about arbitrability.

*Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11 (2d Cir. 2012), which Petitioners cite in support of their argument, is inapposite. Iraq, a non-signatory to the contract at issue, sought to compel arbitration based on a contract between the United Nations and BNP Paribas. *Id.* at 12. Unlike here, Iraq had no relation to the contract signatories besides as a "purported third-party beneficiary of the contract." *Id.* at 13; *see also Holzer v. Mondadori*, No. 12 Civ. 5234, 2013 WL 1104269, at *8 (S.D.N.Y. Mar. 14, 2013) ("In *BNP Paribas*, however, the non-signatory seeking to compel arbitration had *no legal relationship* to the signatory and thus *Contec* did not compel the

---

subject to the [] agreement [with the arbitration clause]," *Contec*, 398 F.3d at 209, by filing a Notice of Demand that included the BHGE entities.

conclusion that plaintiffs in that case had 'clearly and unmistakably' agreed to arbitrate issues of arbitrability with respect to claims against the non-signatory." (emphasis added)).

Morevoer, the cases construing *Contec* suggest that a corporate relationship is a "sufficient relationship." *See Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016) (distinguishing *Contec* because the non-signatory did not bear "any corporate relationship" to the signatories of the agreement containing the arbitration provision); *Holzer*, 2013 WL 1104269, at *9 (sufficient relationship lacking because non-signatory was never "an officer, director, member, manager, employee, shareholder or agent of" the signatory and "expressly disavows *any* connection, legal or otherwise," to the signatory (emphasis added)). Accordingly, because there is an undisputed corporate relationship between the BHGE entities and GEOG, the Court finds that there is a sufficient relationship under the principles enunciated in *Contec* for "arbitration of the issue of arbitrability."[4] *Contec*, 398 F.3d at 209. Whether the BHGE entities are successors-in-interest to GEOG "is an issue that pertains directly to the . . . scope or validity of the [Contracts]" and, therefore, "it is within the jurisdiction of the [Tribunal] pursuant to AAA Rule R-7(a) as incorporated into the [Contracts]." *Id.* at 210 (internal quotation marks and citation omitted). In other words, because IEC "agreed to be bound by provisions that clearly and unmistakably allow the arbitrator to determine her own jurisdiction over an agreement to arbitrate whose continued existence and validity is being questioned, it is the province of the arbitrator to decide whether a valid arbitration agreement exists." *Id.* at 211 (internal quotation marks and citation omitted).

---

[4] Moreover, despite their contentions now, Petitioners initial decision to file a demand for arbitration that included the BHGE entities further evidences their intent to delegate the issue of arbitrability to the arbitrator.

**CONCLUSION**

For the reasons stated above, the BHGE entities' motion to dismiss the petition is GRANTED and the petition is DISMISSED. The Clerk of Court is directed to terminate the motion at ECF No. 31 and close the case.

SO ORDERED.

Dated: August 13, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge